IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BETTY J. CUMMINS, EVELYN J. LACEY,<br>BARBARA A. BOYD, MELVIN<br>WASHINGTON, and DEBRA H. GEORGE ) | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| R. DAVID PAULISON, in his official | ) |
| capacity as Administrator of the Federal | ) |
| Emergency Management Agency/Under | ) |
| Secretary of Homeland Security for | ) |
| Emergency and Preparedness | ) |
| Response | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF HOUSING AND URBAN | ) |
| DEVELOPMENT | ) |
| | ) |
| Defendants. | ) |

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I.  INTRODUCTION

1.     This case concerns the unlawful deprivation of federal rental assistance to

qualified victims of Hurricanes Katrina and Rita.  Section 408 of the Robert T. Stafford Disaster

Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. Chapt. 68, authorizes the

Federal Emergency Management Agency ("FEMA" or "the Agency") to provide rental

assistance as part of its disaster relief efforts, and requires the FEMA to "prescribe rules and

regulations to carry out this section, including criteria, standards, and procedures for determining

eligibility." 42 U.S.C. § 5174(i).  This rental assistance program, hereinafter referred to as "the

Section 408 program" or "the program," was originally administered in its entirety by FEMA. Since September 1, 2007, the program has been administered by Defendant United States Department of Housing and Urban Development ("HUD") as part of its Disaster Housing Assistance Program ("DHAP"), under qualification criteria established and controlled by FEMA.

2.      Plaintiffs Betty Cummins, Evelyn Lacy, Barbara Boyd, Melvin Washington, and Debra George (collectively "Plaintiffs") are individuals who, after the President declared major disasters following Hurricanes Katrina and Rita in August and September 2005, respectively, were found eligible for Section 408 rental assistance under 42 U.S.C. § 5174, because the disasters rendered their primary residences destroyed or uninhabitable, and because each was economically unable to find adequate rental housing without assistance.

3.      Despite qualifying for and receiving Section 408 assistance from FEMA, and without any change in their qualifying circumstances, FEMA informed Plaintiffs in or around August 2007 that they were no longer eligible for Section 408 assistance under a new criterion that FEMA promulgated without required notice or process, and that was illegally retroactive in effect. Specifically, FEMA issued letters (referred to hereinafter as the "August 2007 letters") informing Plaintiffs (and others) that they were no longer eligible for Section 408 rental assistance because the Agency concluded that each Plaintiff had not been "receiving [such] assistance as of February 28, 2007" (hereinafter referred to as the "February 28" rule or criterion).

4.      Given the manner in which the assistance program was administered – *i.e.,* where applications were submitted after prior funds were exhausted, and months would often pass without notification – the February 28 criterion that persons had to be "receiving assistance" as of some date has no objective application. FEMA's August 2007 letters did not inform Plaintiffs

**COMPLAINT**                           **Page 2**

of their statutory right to appeal the termination of benefits under the program. *See* 42 U.S.C. § 5189a. Indeed, Plaintiffs were not even aware of the new rule's existence until FEMA issued the August 2007 letters, approximately six months after the "February 28, 2007" cut-off date, notifying Plaintiffs they were no longer eligible for Section 408 rental assistance.

5.      Nonetheless, following receipt of the August 2007 letters, Plaintiffs timely exercised their right to appeal under the general appeal guidelines set forth in 44 C.F.R. § 206.115 by filing written notices of appeal with Defendant Paulison's designee, the FEMA Region VI Regional Director in Texas. All of these appeals were filed more than ninety days ago and all were filed within sixty days of receipt of the notice of ineligibility. To date, and despite a requirement that FEMA issue a written decision regarding such appeals within ninety days of receiving the appeal, *id.* § 206.115(f), FEMA has made no final determinations.

6.      Plaintiffs bring this action to challenge FEMA's arbitrary and capricious failure to promulgate and apply consistent qualification standards for the Section 408 program, as required by the Stafford Act and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559. FEMA failed to establish any objectively enforceable or discernable standards in terminating Plaintiffs' Section 408 rental assistance, thereby disenfranchising Plaintiffs by implementing an illegally promulgated and retroactive rule. FEMA also has violated its own regulations and the Stafford Act by failing to act on Plaintiffs' appeals.

7.      Plaintiffs respectfully request that this Court vacate the illegally promulgated February 28 rule and order FEMA to: (a) make public all eligibility criteria under which it operated the Section 408 program for continued rental assistance as of February 2007; (b) review applications it denied under the auspices of the illegal February 28 rule; and (c) provide appropriate benefits to applicants eligible for continued Section 408 rental assistance but for

application of the February 28 rule. In the alternative, Plaintiffs respectfully request that this Court order FEMA to expeditiously issue decisions on pending appeals and provide detailed enumerations of the reasons why any individual whose appeal is denied is not eligible for assistance under established criteria.

## II.  SUBJECT MATTER JURISDICTION

8.      This Court has subject matter jurisdiction under 5 U.S.C. §§ 701-06 (APA's judicial review provisions) and 28 U.S.C. § 2201 (Declaratory Judgment Act).

9.      This Court also has jurisdiction under 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."

## III.  VENUE

10.      Venue lies in this Court under 28 U.S.C. § 1391(e). Defendant Administrator of FEMA/Under Secretary of Homeland Security for Emergency Preparedness and Response is an officer of the United States. Defendant HUD is an "agency of the United States." Each party is located within the District of Columbia.

11.      Venue also is vested in this Court by 5 U.S.C. § 703.

## IV.  PARTIES

12.      Plaintiff Betty Cummings is a 65-year-old U.S. citizen who resided in New Orleans, Louisiana in August 2005 before Hurricanes Katrina and Rita struck the Gulf Coast. She is eligible for disaster relief and assistance under the Stafford Act for losses she suffered during the two hurricanes.

13.      Plaintiff Evelyn Lacy is a U.S. citizen who resided in New Orleans, Louisiana in August 2005, before Hurricanes Katrina and Rita struck the Gulf Coast. She is eligible for

**COMPLAINT**                              **Page 4**

disaster relief and assistance under the Stafford Act for losses she suffered during the two hurricanes.

14.     Plaintiff Barbara Boyd is a U.S. citizen who resided in New Orleans, Louisiana in August 2005, before Hurricanes Katrina and Rita struck the Gulf Coast. She is eligible for disaster relief and assistance under the Stafford Act for losses she suffered during the two hurricanes.

15.     Plaintiff Melvin Washington is U.S. citizen who resided in New Orleans, Louisiana in August 2005, before Hurricanes Katrina and Rita struck the Gulf Coast. He is eligible for disaster relief and assistance under the Stafford Act for losses that he suffered during the two hurricanes.

16.     Plaintiff Debra George is a U.S. citizen and was a homeowner residing in New Orleans, Louisiana in August 2005, before Hurricanes Katrina and Rita struck the Gulf Coast. She is eligible for disaster relief and assistance under the Stafford Act for losses that she suffered during the two hurricanes.

17.     Defendant R. David Paulison is Administrator of FEMA/Under-Secretary of Homeland Security for Emergency Preparedness and Response. Defendant Paulison, by and through his designees, is charged with administering disaster assistance programs under the Stafford Act, 42 U.S.C. § 5121 et seq., for the benefit of persons who have been victims of a natural disaster, and he is responsible for the illegal actions charged in this complaint. He is named solely in his official capacity.

18.     Defendant HUD is an agency of the United States. HUD is currently responsible for administering the Section 408 program at issue in this suit. HUD is named to ensure that Plaintiffs may be afforded the complete relief to which they are legally entitled.

**COMPLAINT**                                 **Page 5**

## V.  **STATUTORY AND REGULATORY FRAMEWORK**

19.      The APA defines a rule as "the whole or part of an agency statement of general or

particular applicability and **future effect** designed to implement, interpret, or prescribe law or

policy . . . ." 5 U.S.C. § 551(4) (emphasis added).

20.      Section 408 of the Stafford Act authorizes FEMA to provide rental assistance as

part of its disaster relief efforts, and requires the Agency to "prescribe rules and regulations to

carry out this section, including criteria, standards, and procedures for determining eligibility."

42 U.S.C. § 5174(i).

21.      The regulations governing initial and continued qualification for such assistance

("eligibility factors") are set forth in 44 C.F.R. § 206.113-114.

22.      The initial eligibility factors provide only general guidance.  For example,

"FEMA may only provide assistance [w]hen the individual . . . has incurred a disaster-related

necessary expense . . . ." *Id.* § 206.113(a)(1).  "[H]ousing assistance" – the type of assistance at

issue in this case, *see*  42 U.S.C. § 5174(c) (enumerating the types of housing assistance that may

be provided), may be provided only "if the primary residence has been destroyed, is

uninhabitable, or is inaccessible," or "if a renter's primary residence is no longer available as a

result of the disaster." 44 C.F.R. § 206.113(a)(8)-(9).

23.      The conditions for continued assistance are more detailed than the

aforementioned criteria for initial assistance.  For example, continued assistance is available

"based on need, and generally only when adequate, alternate housing is not available or when the

permanent housing plan has not been fulfilled through no fault of the applicant." 44 C.F.R. §

206.114(a).  In addition, applicants "must establish a realistic housing plan no later than the first

certification for continued assistance[,] provide documentation showing they are making efforts

**COMPLAINT**                                **Page 6**

to obtain permanent housing[,] submit rent receipts to show that they have exhausted the FEMA rent funds, and provide documentation identifying the continuing need." *Id.* § (b)(1)-(2).

24.     The Stafford Act provides that "[a]ny decision regarding eligibility for, from, or amount of assistance . . . may be appealed within 60 days after the date on which the applicant for such assistance is notified of the award or denial of award of such assistance." 42 U.S.C. § 5189a(a). It also provides that "[a] decision regarding an appeal under subsection (a) of this section **shall** be rendered within 90 days after the date on which the Federal official designated to administer such appeals receives notice of such appeal." *Id.* § (b) (emphasis added).

25.     Although the initial decision as to whether or not to provide housing, rental, or other emergency assistance is largely discretionary, once that decision is made, FEMA is required to follow the mandatory provisions of the Stafford Act and its implementing regulations. *See Watson v. FEMA*, No. H-06-1709, 2006 WL 5249703, at \*\*2-3 (S.D. Tex. May 30, 2006), *rev'd on other grounds, see* 2006 WL 3420613, No. 06-20651 (5th Cir. Sept. 6, 2006) *(per curiam)* (deciding the issue on the merits, leaving intact the ruling on the issue of standing based on non-discretionary duties). These mandatory provisions, coupled with APA mandates, require FEMA to, among other things, establish objective, discernable criteria, through adequate rulemaking procedures, for terminating Section 408 rental assistance. *See* 5 U.S.C. §§ 551-559. This Court has subject matter jurisdiction to hear the validity of claims, like those made here, alleging FEMA's violation of such mandatory provisions. *See Ass'n of Community Organizations for Reform Now (ACORN) v. FEMA*, 463 F. Supp. 2d 26 (D.D.C. 2006) (granting preliminary injunction).[1]

---

[1]     After the *ACORN* decision, plaintiffs in that case successfully moved to dismiss their complaint without prejudice, and the court of appeals dismissed as moot an interlocutory appeal by FEMA on the granting of the preliminary injunction. These events followed the appellate court's denial of a motion for reconsideration of a prior order granting in part and denying in

26.     Section 408 rental assistance may not be provided "with respect to a major disaster after the end of the 18-month period beginning on the date of the declaration of the major disaster by the President, except that the President may extend that period if the President determines that due to extraordinary circumstances an extension would be in the public interest." 42 U.S.C. § 5174(c)(1)(B)(ii); *see also* 44 C.F.R. § 206.110(e).

27.     On April 26, 2007, Defendant Paulison announced that the period for providing housing assistance to victims of Hurricanes Katrina and Rita would be extended through March 1, 2009. In the summer of 2007, administration of the housing assistance was largely transferred to HUD. *See* 72 Fed. Reg. 47060, 47060 (Aug. 22, 2007) (notice of transition and criteria).

## VI.  **FACTUAL ALLEGATIONS**

### A.    **Background on the Disaster and Need for Assistance**

28.     Hurricane Katrina made landfall in Louisiana and other Gulf States on August 29, 2005 after passing through southern portions of Florida on August 27, 2005. Hurricane Rita hit Louisiana and Texas on September 24, 2005.

29.     Hundreds of thousands of homes in Louisiana, Mississippi, Alabama, and Florida, including 200,000 in New Orleans alone, were flooded and rendered destroyed or uninhabitable as a result of Hurricane Katrina. Thousands of other homes and apartments in Texas and Louisiana were likewise flooded or severely damaged by Hurricane Rita.

30.     Rents skyrocketed in the period following the disasters, increasing by fifty percent in the New Orleans area. In addition, thousands of businesses and jobs were destroyed by the hurricanes and the resulting flooding.

---

part a motion to stay this Court's judgment that indicated that appellees ACORN, *et al.* were unlikely to prevail on their claim that they had a property interest in the relief benefits. *See id.*, No. 06-5403, Order (D.C. Cir. Jan. 16, 2007) (*per curiam*).

**COMPLAINT**                                      **Page 8**

31.     All Plaintiffs resided in areas affected by Hurricanes Katrina and Rita, and they were forced to evacuate their homes as a result of the hurricanes.

32.     The homes that Plaintiffs occupied before Hurricanes Katrina and Rita were destroyed or made uninhabitable, and are still uninhabitable.

33.     Subsequent to the disasters, FEMA determined that each of the Plaintiffs was eligible for temporary housing assistance under 42 U.S.C. § 5174 and 44 C.F.R. §§ 206.113 & 206.117(b)(1)(i) as a result of their loss of housing, coupled with either their increased rent or loss of employment income.

34.     Each Plaintiff continues to suffer hardships because of his or her loss of housing combined with increased rent or loss of employment income.

**B.      FEMA's Administration of the Rental Housing Assistance Program**

35.     FEMA's administration of its housing assistance programs has been fraught with irregularities, inconsistencies, and incompetence.

36.     With respect to the Katrina/Rita Section 408 program, FEMA has never published, nor consistently applied, a uniform set of eligibility criteria, either for initial eligibility or continued assistance.  As a result, Plaintiffs have received a wide variety of eligibility determinations that cannot be attributed to differences in the circumstances underlying the requests for assistance.

37.     On September 24, 2005, FEMA announced plans to begin providing eligible persons with "emergency transitional housing" ("ETA") to cover three months worth of rent to victims of Hurricane Katrina, and extended to victims of Hurricane Rita shortly thereafter. Following the initial three-month grant of assistance, victims were required to apply to FEMA for recertification for continued Section 408 rental assistance, according to, at a minimum, the

**COMPLAINT**                           **Page 9**

criteria laid out in 44 C.F.R. § 206.114, which, if granted, covered additional three month periods.

38.    In the context of FEMA's rental assistance program, therefore, there were persons who received initial assistance and an advance award of three months of continued rental assistance. Following exhaustion of these benefits, in order to receive continued assistance on a three-month basis, such persons, including Plaintiffs, had to file the required documentation demonstrating continuing eligibility and await an eligibility determination or request for additional information. This process inevitably lead to gaps in which classes of eligible persons did not receive rental assistance while their applications were being processed. As a result, subsequent continued rental assistance awards were partially or wholly retroactive – *i.e.*, covering rent that accrued while the applications were being processed.

39.    In many instances, the gaps between the applications for continued rental assistance and final determinations of eligibility exceeded three months.

40.    FEMA did not specify in the approval notices which months the continued rental assistance was intended to cover. Therefore, most, if not all, victims of Hurricanes Katrina and Rita who experienced gaps in rental assistance did not know for which particular months FEMA was awarding them rental assistance.

**C.    Transition to the HUD-Administration and Promulgation of Illegal February 28 Rule**

41.    On August 22, 2007, FEMA published a notice in the Federal Register announcing: "Due to the severity of Hurricanes Katrina and Rita and [HUD's] expertise in assisting families with long-term housing needs through its existing infrastructure of Public Housing Agencies (PHAs), the President determined that housing assistance should be transitioned to HUD to address this continuing need." 72 Fed. Reg. at 47060. FEMA also

announced that assistance would be extended "to provide rent subsidies to eligible families for a period not to exceed 16 months commencing November 1, 2007 and ending March 1, 2009." *Id.*

42.    To be eligible for rental assistance under the HUD-administered program, the notice stated: "Families eligible for [Disaster Housing Assistance Program] are those identified by FEMA who: (1) Currently receive rental assistance authorized under section 408 of the Stafford Act . . . . FEMA will rely on the eligibility standards for its temporary housing program at 44 C.F.R. [§] 206.113 in determining who is eligible for referral to the DHAP." *Id.* As such, FEMA is solely responsible for determining eligibility for DHAP. DHAP assistance is not treated as "individual assistance" under 42 U.S.C. § 5174, as it is awarded regardless of whether the individual has reached the maximum on such assistance set out under 42 U.S.C. § 5174(h). Notably, the August 22, 2007, notice said nothing about assistance status as of February 28, 2007.

43.    In or around August 2007, each Plaintiff, and many others, received a letter stating:

> Due to the extraordinary circumstances of Hurricanes Katrina and Rita, the period of housing assistance was extended for those victims who had met FEMA's criteria for continued rental assistance based on their individual circumstances and **were still receiving assistance as of February 28, 2007**. As you were not receiving assistance at that time, FEMA is unable to extend you any further housing assistance.

(emphasis added.) These letters did not give the required notice of the Stafford Act-guaranteed right to appeal the determination of ineligibility.

44.    The August 2007 letter was the first notice of this new February 28 criterion. Neither the Stafford Act nor its implementing regulations specify any such criterion, nor did FEMA provide any notice or opportunity for public comment on the February 28 rule prior to its

**COMPLAINT**                    **Page 11**

promulgation. Remarkably, the letters, which issued after the February 28 rule's ostensible

promulgation, were sent five to six months **after** the effective February qualification date.

45.    The concept of "receiving assistance" as of a specified date has no objective

meaning under the program as administered by FEMA. Rather, there were classes of applicants

who were either eligible or ineligible as of that date, depending on FEMA's ongoing

determinations process.

46.    Moreover, FEMA delayed action on applications submitted by potentially eligible

applicants on or after February 28, 2007 or issued denials for recertification after that date and

failed to act on appeals of these denials. FEMA then used the February 28 rule, which was

promulgated without adherence to any APA-required process and which was illegally retroactive

in effect, to make a substantial number of persons ineligible for the transition to the HUD-

administered DHAP program. Thus, FEMA abused its discretion in administering the program.

47.    As a result, some persons certified as eligible for continued rental assistance in or

after February 2007 have subsequently been deemed by FEMA not to have been "receiving"

rental assistance as of February 2007.

48.    Arbitrarily choosing a single date by which applicants had to be in a certified

status also creates another inequity. On one hand, applicants whose prior recertification ended as

of November 31, 2006, and who had to recertify for the period of December 2006 through

February 2007, had three months to meet FEMA's recertification and documentation

requirements and actively be receiving rental assistance as of February 28, 2007. On the other

hand, applicants whose prior recertification ended as of January 31, 2007, and who had to

recertify for the period of February-April 2007, had only one month in which to meet FEMA's

recertification requirements in order to be deemed to have been actively receiving rental assistance as of February 28, 2007.

49.    In short, FEMA illegally disenfranchised thousands or tens of thousands of eligible participants, including Plaintiffs, from receiving continued assistance and transitioning to the DHAP program.

**D.    Problems Experienced by Plaintiffs**

**Betty J. Cummings**

50.    Plaintiff Betty Cummings submitted a request to FEMA for additional rental assistance on February 27, 2007. The request was denied on the grounds that she did not submit sufficient documentation regarding her housing plan. She submitted the required documentation in March 2007, but did not receive any further decision until August 2007, when she received the notice that she was determined ineligible for further rental assistance because of her status on February 28, 2007.

51.    Ms. Cummings lives on a fixed retirement income, but her rent has doubled because of housing shortages resulting from Hurricane Katrina. As a result, she has enormous debts and is facing potential bankruptcy.

52.    On September 28, 2007, counsel for Ms. Cummings submitted an appeal to FEMA of the determination of ineligibility.

53.    On or about November 28, 2007, the New Orleans FEMA staff that reviewed her appeal recommended that she be recertified for rental assistance. To date, however, there has been no administrative follow-up and FEMA has issued no decision on this appeal.

**COMPLAINT**                              **Page 13**

**Evelyn J. Lacey**

54.     Plaintiff Evelyn Lacey is a single mother and sole provider for her daughter, who

is now in college. Ms. Lacey was a renter in New Orleans prior to Hurricane Katrina. Following

the disaster, Ms. Lacey, like numerous other families, was displaced from her home to Georgia

and then to Baton Rouge, Louisiana. She returned to New Orleans in June 2007 to be closer to

her daughter. Ms. Lacey also became responsible for her elderly, disabled father who has lived

with her since the disaster. Ms. Lacey received rental assistance from FEMA to help with her

increased rental costs following Hurricane Katrina.

55.     Ms. Lacey's rent has increased from $450 to $725 per month since Hurricane

Katrina without any corresponding increase in her income, and she remains in need of housing

assistance.

56.     Ms. Lacey submitted a request for continued rental assistance to FEMA on

January 3, 2007. On January 17 and 22, February 1 and 23, and April 26, she submitted

additional documents, attempting to satisfy FEMA as to her continuing eligibility status. FEMA

delayed resolution of her application until August 2007, when she received a disposition of her

request, stating she was ineligible because of her status in February 28, 2007.

57.     On August 15, 2007, Ms. Lacey faxed an appeal of the determination of

ineligibility to FEMA, which FEMA subsequently denied. On October 3, 2007 her counsel

submitted an appeal for her as to the denial. FEMA has issued no decision on the appeals.

**Barbara A. Boyd**

58.     Plaintiff Barbara Boyd is a 61-year-old woman whose rental home in New

Orleans was flooded by five feet of water from a levee break following Hurricane Katrina. After

the storm, she lived temporarily at the New Orleans Convention Center and eventually was

**COMPLAINT**                                         **Page 14**

evacuated to Arkansas. She, along with other evacuees, was placed into military barracks and was later moved into HUD-assisted housing in Arkansas. She returned from her involuntary displacement to New Orleans to be near a sister with terminal cancer. On her return, the least expensive rental she could find was $550 per month—nearly twice what she had paid before the disaster.

59.    In July 2007, FEMA granted Ms. Boyd three months of rental assistance after she returned to New Orleans. But when she sought recertification, she was denied further assistance and received the August 2007 letter denying further continued assistance based on her status on February 28, 2007. Her circumstances had not changed since FEMA's July 2007, eligibility certification only one month prior to the August letter.

60.    Ms. Boyd has not regained her pre-Katrina income because her pre-Katrina place of employment has closed. Upon her return to New Orleans, she held a grant-funded position in a daycare center. That grant has now ended, and she is looking for other employment.

61.    Ms. Boyd recently regained self-sufficiency by finding low-income senior housing in New Orleans, but seeks the rental assistance improperly denied for the period before she found her current stable housing situation.

62.    On October 10, 2007, counsel for Ms. Boyd submitted an appeal of the determination of ineligibility, but FEMA has issued no decision on this appeal.

**Melvin Washington**

63.    Plaintiff Melvin Washington submitted papers seeking to be recertified for FEMA Section 408 rental assistance on January 5, 2007. In response to letters from FEMA dated February 13, and February 20, 2007, he submitted additional documentation to verify his search for employment and housing plan. Subsequently he submitted further documentation. FEMA

delayed resolution of Mr. Washington's case for approximately six months, ultimately sending him a letter stating that he was ineligible based on his status on February 28, 2007.

64. Since the storm, Mr. Washington has been unable to find steady employment, and has subsisted on occasional odd jobs that provide less than half his pre-storm income.

65. On September 28, 2007, counsel for Mr. Washington filed an appeal of the determination of ineligibility, but FEMA has issued no decision on this appeal.

**Debra H. George**

66. Plaintiff Debra George, like tens of thousands of New Orleanians, is a homeowner who has not yet been able to restore and reoccupy her home. In January 2007, when she sought recertification for FEMA Section 408 rental assistance, FEMA staff told her she had reached the maximum for individual assistance allowed. She later found out about, and requested to be transitioned to, payments made through an intermediary (Corporate Lodging Consultants ("CLC")), as was the practice for other Katrina victims who reached the maximum. She submitted documents requested by FEMA in order to be certified, and continued to respond to FEMA's document requests until August 2007, when she received a notice stating that she would not be eligible for rental assistance because of her status on February 28, 2007.

67. On October 25, 2007, Ms. George filed an appeal of the determination of ineligibility, but FEMA has issued no decision on this appeal.

**E. Plaintiffs Filed Timely Appeals That FEMA Has Illegally Failed to Adjudicate**

68. Despite the lack of notice as to their right to appeal, Plaintiffs administratively appealed the determination as authorized in FEMA's regulations.

69. FEMA has failed to complete a fair and impartial consideration of the Plaintiffs' appeals, as required by 42 U.S.C. § 5189a(c).

**COMPLAINT**                                          **Page 16**

70.     FEMA acknowledged most, if not all, of these appeals.

71.     Most or all of the appeals were forwarded to FEMA staff in New Orleans, who have recommended reinstatement of rental assistance for at least some of the Plaintiffs.

72.     However, FEMA never issued a decision based on those recommendations. Instead, other FEMA staff deferred action on the appeals, implicitly rejecting the recommendations to reinstate rental assistance.

73.     All of the Plaintiffs' appeals have been pending for more than ninety days. Most were filed in October 2007, and all were filed before the sixty-day deadline after receipt of the termination notice.

74.     Nonetheless, FEMA has issued no decisions on the appeals.

75.     As a result of FEMA's action in retroactively removing Plaintiffs from the Section 408 program based on the unlawful February 28 rule, Plaintiffs have not been transitioned to the DHAP program.

76.     FEMA can still establish Plaintiffs' (and others similarly situated) eligibility for this program by ruling on their need for continued housing assistance.

77.     Without relief from this Court, Plaintiffs are harmed and will continue to be harmed by the Defendants' illegal actions.

## VII.  CLAIMS FOR RELIEF

### COUNT ONE
### (Violations of the Stafford Act and APA)

78.     Plaintiffs allege paragraphs 1 through 77 as if they were set forth in full herein.

79.     The APA provides the right of review to "[a]ny person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

**COMPLAINT**                              **Page 17**

80.    The APA prohibits agency action that is:

> (A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law . . . .

5 U.S.C. § 706(c).

81.    Defendants have unlawfully administered the Section 408 program and its

successor, DHAP, by, among other actions:

A.    Promulgating the February 28 rule without observance of any procedure required by law, including arbitrarily and capriciously failing to give any notice to affected persons of the intention to implement a deadline for assistance;

B.    Promulgating a rule, the February 28 rule, which has an illegal retroactive effect;

C.    Abusing their discretion by promulgating a new eligibility criterion, the February 28 rule, which is not contemplated by applicable statute or regulation, and which fails to create an objectively enforceable standard for determining whether any particular individual qualifies for continued assistance under the program; and

D.    Preventing otherwise eligible participants in the Section 408 program from qualifying for benefits under the new DHAP program without providing the required notice of the right to appeal such decisions, as required by the Stafford Act, 42 U.S.C. § 5189a(a).

### COUNT TWO
### (Violation of the Stafford Act, via APA)

82.    Plaintiffs allege paragraphs 1 through 81 as if they were set forth in full herein.

83.    The APA authorizes courts "to compel agency action unlawfully withheld or

unreasonably delayed." 5 U.S.C. § 706(1).

84.    The Stafford Act states: "A decision regarding an appeal under subsection (a) of

this section shall be rendered within 90 days after the date on which the Federal official

designated to administer such appeals receives notice of such appeal." 42 U.S.C. § 5189a(b)

(emphasis added).

85.    Defendants have unlawfully withheld, and unreasonably delayed, decisions on

appeals, including those of Plaintiffs, beyond the 90-day statutory deadline.

## VIII.  PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully seek an Order of this Court:

(a)    Enjoining Defendants from enforcing the February 28 rule;

(b)    Declaring, under the Declaratory Judgment Act, 28 U.S.C. § 2201, that the
February 28 rule was promulgated in violation of the Stafford Act and APA for,
among others, the reasons stated above, and declaring the rule to be without legal
effect;

(c)    Vacating the illegally promulgated February 28 rule; nullifying any determinations
of ineligibility based on that rule; ordering FEMA to notify all persons who
received such February 28 notices that these determinations have been vacated, to
issue new decisions as to the eligibility of the plaintiffs, and to provide a means for
the Plaintiffs and others to submit applications for review and consideration for
subsequent periods of continued rental assistance;

(d)    Ordering Defendants to transition persons to the DHAP program who would have
been transitioned in the absence of the illegal February 28 criterion;

(e)    Ordering Defendants to review, without regard to the February 28 rule, all pending
and subsequently submitted applications for rental assistance utilizing the criteria
identified in the August 22, 2007, *Federal Register* notice, and to transition all
eligible persons to the DHAP program; further, in the event of assistance or
transitioning denials, ordering Defendants to provide detailed reasons for denying
such assistance or transition and informing such persons of their right to appeal;

(f)    Ordering Defendants to timely issue decisions on all pending appeals, in the event
that other requested relief is not granted;

(g)    Awarding Plaintiffs their costs and attorneys' fees as appropriate[2]; and

(h)    Awarding such other relief as is just and proper.

---

[2]    At the current time, Southeast Louisiana Legal Services Corporation is prohibited by
federal law governing organizations funded by the Legal Services Corporation from collecting
attorney fees for itself, but may be entitled to assign the right to such fees to a private attorney.
Further, this prohibition does not apply to attorneys in private practice who serve as co-counsel
such cases.

Dated:  July 14, 2008

Respectfully submitted,

David H. Laufman
D.C. Bar No. 420162
Shaun M. Gehan
D.C. Bar No. 483720
Eric Waeckerlin
D.C. Bar No. 977228
Kelley Drye & Warren LLP
3050 K Street, N.W. – Suite 400
Washington, D.C.  20007
Telephone:  (202) 342-8400
Facsimile:  (202) 342-8451
**Attorneys for Plaintiffs**

**On Brief:**

Davida Finger, Louisiana Bar No. 30889
William P. Quigley, Louisiana Bar No. 7769
University Law School Clinic
7214 St. Charles Avenue, Campus Box 902
New Orleans, Louisiana 70118
Phone: 504-861-5596
Fax: 504-861-5440
**Attorneys for Plaintiff Debra George**

David H. Williams, Louisiana Bar No. 17867
Alice R. Riener, Louisiana Bar No. 31301
New Orleans Legal Assistance
(An office of Southeast Louisiana Legal Services)
1010 Common Street, Suite 1400A
New Orleans, Louisiana  70112
Telephone: (504) 529-1000, ext. 263, 230
Fax:(504) 529-1008

**Attorneys for Plaintiffs Betty Cummins, Evelyn Lacey, Barbara Boyd, and Melvin Washington**

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Betty Cummins, Evelyn Lacey, Barbara Boyd, Melvin Washington and Debra George                    88888

**DEFENDANTS**

R. David Paulison, in his official capacity as Administrator of the Federal Emergency Management Agency/Under Secretary of Homeland Security for Emergency and Preparedness Response and United States Department of Housing and Urban

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David H. Laufman
Shaun M. Gehan
Eric Waeckerlin
Kelley Drye & Warren LLP
3050 K Street, N.W.- Suite 400
Washington, D.C. 20007

Case: 1:08-cv-01196
Assigned To : Collyer, Rosemary M.
Assign. Date : 7/14/2008
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ A. *Antitrust*
☐ 410 Antitrust

○ B. *Personal Injury/ Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

● C. *Administrative Agency Review*
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ E. *General Civil (Other)*      OR      ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

4

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

5 USC 701    ADMN. Proc. ACT

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 0 | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐   NO ☒ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐   NO ☒    If yes, please complete related case form.

**DATE** July 14, 2008    **SIGNATURE OF ATTORNEY OF RECORD** _(signature)_

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

    **I.**      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    **III.**      CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    **IV.**      CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

    **VI.**      CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    **VIII.**      RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.